Filed 9/4/14  Aaron M. v. Patricia E. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| AARON M., | C072899 |
| Respondent, | (Super. Ct. No. 11FL02232) |
| v. | |
| PATRICIA E., | |
| Appellant; | |
| PAMELA M. et al., | |
| Claimants and Respondents; | |

Aaron M. initiated this action in April 2011 to establish his paternity of Eric (born October 2006), the son of Patricia E.,[1] and to establish Aaron's rights to custody and visitation.  (Fam. Code, § 7630.)[2]  In October 2011, the trial court granted the motion of Aaron's parents, Pamela and Derek M. (collectively, the grandparents), to join in the

---

[1]  In accord with the style of Patricia's brief, we refer to the parties by their first names.

[2]  Undesignated statutory references are to the Family Code.

action as claimants (see *In re Marriage of Ross & Kelley* (2003) 114 Cal.App.4th 130, 131) to establish their independent visitation rights with Eric (see § 3104) after Patricia cut off their contact with the minor.

The trial court determined (with Patricia's consent) that Aaron is Eric's father; it awarded Patricia sole legal and physical custody, and established a visitation schedule for Aaron (under the supervision of the grandparents) and for the grandparents in their own right.  Patricia appeals from these minute orders.[3]  In her appellate brief, Patricia challenges the orders in scattershot fashion under 12 different headings.  Aaron and the grandparents have chosen not to file respondents' briefs, which hampers our task.  However, we distill these themes.  Patricia questions:  the sufficiency of the evidence to support granting visitation to the grandparents over her constitutional right to object, the extent of the visitation the trial court granted to the grandparents, the legality of designating the grandparents as the supervisors of Aaron's visitation with Eric, the failure to condition Aaron's visitations on his submission to drug monitoring, and a "finding" (for which counsel does not provide a citation and which we cannot locate) that Aaron's drug addiction was under treatment.  We shall affirm the minute orders establishing a final custody determination.

---

[3] Patricia appealed in January 2013 from November 9, 2012 minute orders issued after a hearing on Aaron's petition for joint legal and physical custody and the grandparents' request for visitation.  Patricia's opening brief, filed in November 2013, refers to these orders as the "judgment" from which she appealed; we infer that neither she nor the other parties ever obtained a formal judgment in this matter, nor exercised their right to a statement of decision (§ 3022.3).  We conclude these minute orders are appealable because the trial court designated them as "a Final Custody Determination implicating *Montenegro*[ *v. Diaz* (2001) 26 Cal.4th 249] [and] its progeny" (which requires significant changes in circumstances before any modification), and did not direct anyone to prepare a formal custody order or judgment.  (Cf. *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1091 & *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 456 & fn. 7, 459 [both dismissing appeals from custody orders directing the preparation of a formal order].)

## FACTUAL AND PROCEDURAL BACKGROUND

The trial court attempted (in vain) to focus Patricia's counsel on evidence that was pertinent to the criteria governing grandparent visitation. We will attempt to prune back the thicket of facts developed at the hearing to those actually relevant to our analysis.

### A. *Life Before Litigation*

Patricia and Aaron were never married. Aaron has had ongoing addiction issues over the years; he has suffered overdoses, involuntary psychiatric holds, two convictions for driving under the influence, and a 2009 conviction for the second degree burglary of methadone pills from a pharmacy (for which he received informal probation through 2014). He is subject to some painful chronic medical problems, along with anxiety and depression. He is prescribed methadone for his opiate addiction, and uses "medicinal" marijuana for pain.

Patricia, who does not have a high school diploma, receives disability for depression and anxiety. As of 2011, she successfully overcame an addiction to prescription opiates and methadone. Patricia described her relationship with Aaron as distant, and her relationship with the grandparents as veering from "okay" to rocky, getting along better with Derek than Pamela (the trial court agreeing that Derek was the "peacekeeper" between the other two).

From the age of six months (i.e., spring 2007), Eric spent almost every weekend with the grandparents. Patricia claimed she felt coerced into allowing this; Pamela stated that she thought Patricia (who never said anything otherwise) would—as a single mother—welcome having her weekends free. Patricia acknowledged that the grandparents would reluctantly (in her view) allow her to keep Eric on weekends when she had plans for him.

3

## B. *The Course of the Litigation*

In response to Aaron's petition to establish paternity, Patricia sought sole physical custody without any visitation. In a concomitant petition for a protective order, she intimated that there had been a history of domestic violence and recent acts of violence, and sought to have Aaron placed in a "batterer's program." The trial court granted a temporary restraining order allowing for "peaceful contact" for the process of establishing visitation, and referred the matter to mediation.[4] After these proceedings commenced, Patricia ceased voluntary visitations with Aaron or the grandparents except for two or three occasions.

In a July 2011 interim order, the trial court granted joint legal custody, with sole physical custody to Patricia. It provided for visits with Aaron under the grandparents' supervision on alternate Fridays and Saturdays, conditioned on Aaron's testing negative for drugs 48 hours before the visits. It also directed custody evaluations of the parents, and continued the restraining order in effect. Because Aaron always tested positive for methadone (which was allowed) and marijuana use (which was not), Patricia and her attorney refused to allow any court-ordered visits to take place while this order was in effect.

With Aaron's consent, the grandparents had initiated proceedings to become Eric's guardian, ostensibly to obtain shared custody in order to provide medical and other benefits. The probate court declined to take any action other than consolidating that proceeding into the pending family court matter, which in turn declined to entertain the issue at trial.

---

[4] Patricia admitted at trial that there had never been any physical violence, only threats and minor acts of vandalism of her car; she had simply sought the protective order in reaction to Aaron pressuring her for shared custody. The trial court found that while there may have been "juvenile" harassment behavior, domestic violence was not an issue between them.

At a November 2011 hearing on return from mediation, the trial court ordered a custody evaluation of the grandparents, who were now parties to the family court action. It continued the existing visitation order in effect, modifying the testing condition to permit positive drug tests by Aaron for methadone or marijuana. The court continued the hearing on a permanent restraining order to December 2011 and the review of mediation to February 2012. As a result of the modification, the grandparents thereafter resumed seeing Eric on a weekly basis while supervising Aaron's visits with him.

At the hearing on the restraining order, the court found insufficient evidence of anything beyond a contentious custody matter. As a result, it entered only a "peaceable contact" order enforceable in contempt proceedings. At the February 2012 hearing on the results of mediation, the court realized it had erroneously forgotten to order the parents to attend the mediation with the grandparents, and referred the matter back to mediation.

In May 2012, the matter was assigned to the trial judge (Patricia filing a challenge to the initial trial judge). The trial court adopted the April 2012 recommendation of the mediator to continue the present visitation arrangements, as it met Eric's needs, and the recommendation that visits with the grandparents take place even if Aaron failed to pass his drug tests. The two-day hearing on Aaron's petition for joint legal and physical custody and the grandparents' request for visitation at last took place in November 2012.

### C. The Evidence

Patricia did not dispute the existence of a significant relationship between the grandparents and Eric. Although she testified that she did not observe any detriment to Eric during the period that he had only limited contact with the grandparents, the trial court expressly stated that it "completely disbelieve[d] [her] testimony" on the issue of detriment, so we do not need to detail it any further. Her focus at trial was on the behavior (primarily of Pamela) that interfered with her parenting and led to conflicts between Patricia and the grandparents, which in her view demonstrated that visitations

5

would not be in Eric's best interests or would be detrimental (the two alternative ways of describing this criterion (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1180 (*Rich*)). Although Patricia testified at great length about the various incidents (reiterating them in her brief on appeal), we will simply consider it as established (see fn. 7, *post*) that Pamela has been "over the top"[5] and "overstepped her bounds" (in the trial court's words) in failing to respect Patricia's role as Eric's mother, and do not need to delve further into the particulars (including the testimony of other witnesses about Pamela's intrusiveness).

On the issue of detriment/best interests, the initial November 2011 mediation report noted that Eric in one interview stated that he missed his father but "really" missed his grandparents, and made a spontaneous remark to this effect on another occasion. The mediator believed that the conflict between the parties had resulted in deprivation of contact with the grandparents, "and this is not in the child's best interest[s]" because "he needs contact with his Father and . . . grandparents." The mediator found that Patricia wanted complete power over visitations in order to be able to cut them off when she is angry with the grandparents, which also was not in Eric's best interests. Finally, there did not appear to be any evidence that the grandparents had ever attempted to influence Eric against Patricia. The mediator's hearing testimony basically reiterated these points. She thought Eric was "very closely attached to his grandparents" and "would certainly suffer a loss" if deprived of contact with them, which had caused him "some anxiety" during the period when visitation had not been taking place. She did not think there was any conflict in having the grandparents supervise Aaron's visitations, who understood their responsibilities. Their supervision should be sufficient to protect Eric without drug testing; even if Aaron were under the influence of drugs during a visit, this would not be apparent to a child of Eric's age and the grandparents would prevent Aaron from

---

[5] This would include abusing her status as a probation officer, both wearing her uniform or calling upon deputies to effect transfers of custody.

6

otherwise harming his son. Their supervision would also provide additional contact with Eric, furthering his best interests. Patricia should have sole legal custody, however, because co-parenting with a person with addiction issues can be difficult. The mediator recommended more extensive visitation, taking place every other weekend at the grandparents' home from Saturday through Monday morning, where Aaron's visits could also take place (who was not demanding visitation for himself beyond that granted to his parents). She also thought it was important for Eric to spend some holiday time with Aaron and the grandparents.

The April 2012 mediation report noted that Eric spoke well of both his parents and his grandparents. Although he had fewer contacts with the latter under the current order, he seemed satisfied with his weekly visits without staying overnight. In contrast with other accounts, the mediator thought Patricia and the grandparents had an affectionate relationship during the mediation meetings. Because Eric seemed satisfied with the current arrangement, the mediator did not believe Eric's best interests required any departure from the present weekly visits, beyond allowing visitation with the grandparents even when Aaron did not pass a drug test. The mediator reiterated these findings at the November 2012 hearing. She also testified that any further diminishment of Eric's contacts with his grandparents would be "upsetting" and "difficult for him," possibly resulting in feelings of abandonment and a regression in his level of maturity. As a result, Patricia should not have sole discretion over visitation because there are issues of communication and trust between her and the grandparents, and there was the possibility that *no* visits would take place because they had been sporadic in the absence of the court order. Unlike the other mediator, she believed that a child should not see a parent in an "impaired" condition.

Pamela testified that as grandparents they could facilitate Eric's contacts with his large extended paternal family (which includes Aaron's new son, whom Eric likes).

7

Patricia is not interested in doing this (though she did seem positive about Eric meeting his sibling). Visitation independent of Aaron is necessary for this to take place. In her opinion, Aaron is not presently an active addict. He also seems able to care for his new son. However, she would not allow Eric to see Aaron in an impaired state, and he has not appeared to be clearly under the influence during any visitations.

Derek also has never allowed Aaron to be in an impaired state around Eric; he has demanded that Aaron be clean and sober for visits. He allowed visits when Aaron was positive for marijuana only after the court authorized it. He has seen Eric cry when he takes him home after a supervised visit, and Eric says he misses them. His son has a definite drug problem but, not being an expert, he does not have any basis for an opinion about its severity. He does not believe Patricia is an unfit parent in any respect. He admitted being frustrated when Patricia did not see the advantage of preschool, in which the grandparents had enrolled their other grandchildren.

The technician in charge of Aaron's drug tests said his results for methadone and marijuana are some of the highest she had ever seen, and told this to Pamela. She thought that with these results, especially in combination with anti-anxiety medicine, he *should* seem visibly impaired during visits (at least to someone with similar expertise as hers), but admitted he always had seemed functional at his testing appointment, and did not seem impaired at the hearing.

### D. The Ruling

At several points during the hearing, the court emphasized that the grandparents had the burden of establishing their entitlement to court-ordered visitation through proof that it would be in the minor's best interests (or that denial would be detrimental) by clear and convincing evidence sufficient to overcome the special weight it must give Patricia's objection to ordered visitation. It reiterated this at the start of its ruling from the bench: It accorded special weight to Patricia's constitutional right (as a matter of substantive due

8

process) to exercise parental authority in the absence of any demonstration that she is unfit, and the court did not find any evidence of the latter.[6]

The court found that Patricia was a good parent who had addressed her addiction issues, while Aaron had a major problem with drug use about which he was in denial (the court being particularly troubled by his extremely high marijuana results that were "far beyond medicinal"), and overall led an unstable life. As a result, Aaron was not entitled to either joint physical or legal custody, though the court was willing to order visitation. The court further found by clear and convincing evidence that Eric's visitation with his grandparents would be in his best interests. He had a significant bond with them that had developed over years and was the equivalent of a parental bond. Given the dysfunction between Patricia and Pamela in particular, this bond would be cut off in the absence of ordered visitation. This would be detrimental to Eric; if not specifically manifesting itself in anxiety, then in the suffering that otherwise can ordinarily be expected from a severed close relationship.

The court ordered supervised visitation with Aaron on Wednesdays after school (or after 3:00 p.m.) until 8:00 p.m., and on one Saturday from 9:00 a.m. to 6:00 p.m. As for holidays, Aaron would have supervised overnight visits from 6:00 p.m. on Saturday to 6:00 p.m. on Sunday for Fathers' Day; visits on Christmas Eve from 9:00 a.m. to 8:00 p.m.; and four hours on Eric's birthday (from noon to 4:00 p.m. if the parties could not otherwise agree). On the issue of grandparent visitation, the trial court ordered the second and fourth weekends (6:00 p.m. Friday to 6:00 p.m. Sunday) beginning in December, overlapping visits with Aaron on Wednesday, two noncontiguous weeks of vacation not overlapping any major holidays, and six hours independent of Aaron on

---

**6** We repeat ourselves to rebut Patricia's unfounded arguments in her briefing that the trial court in some manner did not apprehend the proper criteria to apply, which we will not address any further.

9

Christmas Eve or December 26 (noon to 6:00 p.m. on December 26 if the parties could not otherwise agree). The court relieved Aaron of the condition of drug testing because it was an expensive redundancy in light of the supervision: If Aaron arrived visibly impaired, the visit would not take place.

In response to objections from Patricia's counsel about the visitation schedule, the court stated that Patricia was free to agree to alternatives for Eric's birthday, and to try to arrange for Aaron's weekend visit to overlap with the grandparents' visits. (Patricia did not raise any objections about Mother's Day or Christmas Day, nor request vacation time not subject to visitation.) The court declined to make any modifications, because it was "not going to micromanage."

In conclusion, the trial court urged the parties to address the dysfunction in their dealings with one another, which resulted in a stranger imposing rules that would make everyone unhappy. As we noted earlier, the court was of the opinion that Pamela had significantly trampled upon Patricia's rights as a mother, and thus advised her to be less intrusive;[7] it asked Patricia to be more trusting; and it pressed Aaron "to get [his] act together." It hoped that in future they could function independent of court orders.

## DISCUSSION

The hyperbolic and unsupported nature of much of counsel's reasoning in support of this appeal indicates an abandonment of the necessity for a professional advocate, even in furthering a client's interests, to evaluate *dispassionately* the record in light of the law. Despite the trial court's sage advice for the parties to turn down the interpersonal heat,

---

[7] "I think that [Pamela] is one of the compelling causes for all of the dysfunction. And I don't mean she does it with a bad heart. I just mean that I think she is overbearing, and she has overstepped her bounds, both legally and where she should be culturally."

10

counsel breathlessly fans the flames.  We will attempt to focus on the gist of the various claims advanced in behalf of Patricia, and ignore that which does not merit response.

### I.  The Order for Grandparent Visitation Reflects a Proper Exercise of Discretion Under the Pertinent Criteria

"[T]]he decision whether . . . an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance.  And, if a fit parent's decision [regarding grandparent visitation] becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination."  (*Troxel v. Granville* (2000) 530 U.S. 57, 70 [147 L.Ed.2d 49, 59].)  This requirement is a function of substantive due process, which gives constitutional protection to the "right of parents to make decisions concerning the care, custody, and control of their children."  (*Id*. at p. 66 [147 L.Ed.2d at p.57].)  The court thus invalidated a Washington statute that considered *only* the child's best interests in visitation with *any* party, without giving *any* consideration to the wishes of the fit parent of the child.  (*Id*. at pp. 67-70 [suggesting that § 3104 is a statute that by contrast gives proper protection to constitutional right of parent].)

*In re Marriage of Harris* (2004) 34 Cal.4th 210 (*Harris*) subsequently confirmed that section 3104 passes constitutional muster on its face.  "Section 3104 . . . permit[s] grandparents of a minor child to petition . . . for visitation rights only if the child's parents are not married . . . .  [It] requires that there be 'a preexisting relationship . . . that has engendered a bond such that visitation is in the best interest of the child' and directs the court to balance 'th[is] interest of the child . . . against the right of the parents to exercise their parental authority' before ordering grandparent visitation" by according a presumption in favor of the parents' wishes that the grandparents must rebut.  (*Harris*, at pp. 225-227; *id*. at p. 230 [statute on its face also does not violate state Constitution]; *id*. at p. 230, fn. 8 [statute *as applied* to mother with sole custody is constitutional].)

11

Although it is not pertinent on appeal, the burden of proof to rebut the presumption is clear and convincing evidence. (*Rich*, *supra*, 200 Cal.App.4th at p. 1180; *In re Angelia P.* (1981) 28 Cal.3d 908, 924 [same standard of "substantial evidence" applies in appellate review of sufficiency of findings based on clear and convincing evidence].) We review a visitation order for an abuse of discretion in its determination that denial of visitation would not be in the child's best interests or, to give the *alternative* phrasing, that denial would be detrimental to the child; this is the equivalent of determining the sufficiency of the evidence to support a ruling. (*Rich*, at pp. 1180 [if visitation is in best interest, it is not detrimental; conversely, if *not* in best interest, then *is* detrimental], 1182 [discretion must have sufficient evidence in support].) It is the appellant's burden to address *all* the evidence in the record in arguing that an order is an abuse of discretion; otherwise, the contention is forfeited. (*Id*. at pp. 1182-1183.)

Patricia argues the ruling did not in fact give her wishes any special weight (even though, as we have noted, the trial court expressly articulated it was doing so). In her view, "it is clear" the court ignored her wishes because it did not give consideration to the nature of Pamela's behavior or its effect on her and Eric, and treated the criterion of best interest "as if that was *the* determinative factor." However, as we have related above (e.g., fn. 7, *ante*), the trial court expressly found that Pamela's behavior was unacceptable, no evidence indicated that the conflict between Pamela and Patricia had *any* effect on Eric, any effect on *Patricia* is irrelevant, and the trial court *obviously* needed to focus on best interest because *this* is the evidence that would allow the court to overcome Patricia's wishes. Patricia purports (without citation to the record) to find the trial court's disregard for her wishes in its advice that she should settle the dispute. Having found this passage otherwise in our review of the record, it reflects a warning from the trial court to *all* the parties that in failing to reach a negotiated resolution of the issue of visitation, they would have a stranger impose a solution on them that likely

12

would not make *anyone* happy, and the court in point of fact expressly stated that it was *not* suggesting they settle.

Switching to best interest/detriment, Patricia contends the finding does not have any expert testimony of a " 'devastating emotional impact' " in support (citing *In re John M.* (2006) 141 Cal.App.4th 1564, 1570, 1571 [finding of detriment in refusal to place minor with noncustodial nonoffending parent unsupported (Welf. & Inst. Code, § 361.2)]).  The case, however, does not purport to require either expert testimony *or* evidence of that extreme a level of detriment as a sine qua non to support a finding.  In any event, the first mediator (to reiterate) reported that Eric himself had told her how much he missed his grandparents after not seeing them for several months, and was experiencing anxiety as a result.  The mediator also believed that Eric was very closely attached to them and would certainly experience a loss if deprived of contact.  As for the second mediator (to reiterate), while she did not think an *increase* in visitations was necessary, she also agreed that any further reduction would be upsetting and difficult for Eric, and could result in him feeling abandoned and in a regression in his level of maturity.[8]  (It is facile for Patricia to denigrate the extent to which the two mediators reported Eric was (and would be) upset at a separation from his grandparents through a comparison with the pique a child experiences when required to perform chores.)  In addition, there was Derek's testimony that Eric cried and said he missed his grandparents during the drive home after a visit.  This testimony also refutes Patricia's claim that the finding of a bond with Eric was speculation.  As for her suggestion that the finding of a

---

[8] Patricia's reliance on the second mediator's description of Eric as a "happy child" to show a lack of detriment fails on many grounds.  Not only had visitations *resumed* at that point, the opinion we just quoted in the text found there *would be* detriment if there were any reduction in visitation (which would occur absent an order); furthermore, to whatever extent his happy state suggests a lack of detriment, it is merely *conflicting* evidence, and that is insufficient to overturn the finding on appeal.

13

strong bond is insufficient of itself without evidence of some sort of *independent* detriment, this shows her failure to appreciate the best interest/detriment duality. Finally, Patricia's claim that the dysfunction between herself and Pamela precludes a finding of best interest in having visitation does not have any authority in support. This was a finding of the *trial court* in *Rich* (which also found an absence of any strong bond), an issue the opinion ultimately did not reach on the merits because the grandparent forfeited review by failing to address the evidence in support of the finding that visitation would not be in the child's best interests. (*Rich*, *supra*, 200 Cal.App.4th at pp. 1179, 1182-1183.)

As there is substantial evidence to support the finding of an existing and extremely close bond between Eric and the grandparents such that visitation would be in Eric's best interest (or that denial of visitation would be detrimental), and the trial court's ruling is not otherwise unreasonable, it did not abuse its discretion in ordering visitation. We turn to Patricia's challenges to the specifics of the visitation order.

## II. The Extent of Visitation Granted Is Not an Abuse of Discretion

Patricia contends the amount of aggregate visitation time for the paternal relatives in the order of itself is a violation of her parenting rights. She does not cite any authority to support this proposition in general, other than *Harris*, which describes grandparent visitation of 30 days per year (not 29, as she calculates) as "extensive" in its opening line. (*Harris*, *supra*, 34 Cal.4th at pp. 214, 219.) This observation does not play any part in the ratio decidendi of the decision, and therefore does not have any significance. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1176; *DeVore v. Department of California Highway Patrol* (2013) 221 Cal.App.4th 454, 461.) Moreover, even if such a constitutional limitation existed on the quantity of visitation granted in a particular case, Patricia does not provide any argument to explain how it would apply in a case in which

14

she (by her own calculations) will have "custody and control" of Eric for 70 percent of the time.

Patricia also argues the aggregate amount of visitation reflects the trial judge's personal recollections of his contacts with his grandparents and does not have any support in the report of the second mediator (who thought the weekly day-long visits were sufficient). In this vein, she argues a grant to the grandparents of independent visitation time is an abuse of discretion. These contentions ignore the first mediator's report (who thought there should be at least two weekend-long visits per month along with holidays), as well as the testimony by Pamela that visitations independent of Aaron's are necessary for them to facilitate bonds with the extended paternal family. This forfeits Patricia's challenge to the sufficiency of the evidentiary basis for the provisions in the order. (*Rich*, *supra*, 200 Cal.App.4th at pp. 1182-1183.) As for an aside in her brief that the ordered visitation "infers that [she] is incapable of caring for her child on Saturdays," this disregards the trial court's express commendation of her parenting abilities in its ruling.

We thus turn to her list of particular complaints. We observe generally that the trial court explicitly advised the parties that its order did not prevent them from agreeing among themselves to different terms. Patricia's arguments thus *assume* the paternal relatives will refuse to deviate from the terms of the order. The trial court, on the other hand, could reasonably have concluded (based on the report of the second mediator that in the absence of counsel Patricia and the grandparents actually got along well) that once the parties accepted the existence of a visitation order, they could make accommodations more amicably. However, we address her challenges to the facial validity of the default provisions.

15

***Mother's Day***

Patricia asserts the trial court's order precludes her from ever celebrating Mother's Day with Eric because it falls on the second weekend of the month during the grandparents' designated weekend. In the first place, she did not raise this objection in the trial court, and it therefore is forfeited. In addition, nothing prevents mother and son from celebrating Mother's Day after 6:00 p.m., or from developing their own special ritual on the day after; one can take time to celebrate motherhood on any of the other 364 days of the year. We accordingly do not find any abuse of discretion in failing specifically to except Mother's Day from the default schedule.

***Eric's Birthday***

Patricia apparently expects us to take judicial notice that noon to 4:00 p.m. "is the time children have their birthday parties," and thus the trial court has given Aaron the "prime hours." In the first place, Eric will be in school for most of this period in most years (which would actually be to *Aaron's* detriment). In any event, nothing prevents Patricia from arranging a morning party or an evening barbeque if she chooses to celebrate on Eric's actual birthday. Therefore, this default provision does not represent an abuse of discretion.

***Christmas Day***

Any objection to the default provision for this holiday is forfeited because Patricia failed to raise it in the trial court, relieving us of any obligation to give it plenary consideration. We also observe her initial claim that her holiday time in *2013* fell on a Wednesday (and thus was subject to the provision for Aaron's visitations on Wednesdays) is moot. On our own motion, we note that this conflict will recur only once during Aaron's minority, in 2019. Given the forfeiture, we observe only that the existence of this single conflict in the default provisions of the order does not represent an abuse of discretion.

16

As for her alternative claim regarding this holiday, Patricia contends she will never be able to celebrate Christmas out of town with Eric because it is sandwiched between the visitations with his father and his grandparents. Given her forfeiture of this issue, we are absolved of extended response. Patricia neither testified to any past practice of traveling during the Christmas holidays, nor testified to any desire to do so in the future. The trial court hardly can be considered unreasonable as a result in failing to anticipate this prospect, and therefore it did not abuse its discretion in failing to make express allowance for it in the default provisions of the order.

*Vacations*

Patricia contends the failure of the trial court to award her any time for vacations free of visitation means that she will never be able to travel with Eric for longer than a Thursday to a Tuesday. She has forfeited the issue. In the absence of any evidence of a past practice of taking vacations or evidence of any desire to do so, it was not an abuse of discretion to fail to include such a provision expressly in the order's default provisions.

### III. The Grandparents Are Proper Visitation Supervisors

Citing one of the California Standards of Judicial Administration (Standard 5.20), which are authorized under Family Code section 3200, Patricia asserts the appointment of the grandparents as supervisors of Aaron's visitation was unauthorized because Pamela had a conflict of interest as an employee of (or through affiliation with) the superior court, because she was a probation officer. (Standard 5.20(g)(3).) She also contends their appointment was an abuse of discretion because they are not "neutral." (Standard 5.20(b) & (g).)

Patricia has not cited to any facts or authority that the employees of a probation department in a county are employees of the superior court or have an "affiliation" with it. The chief probation officer is a *county* officer. (*People ex rel. Deputy Sheriffs' Assn. v. County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1479-1480.) While it is true the

17

chief probation officer is appointed by the judges of the superior court (*People v. Ferguson* (2003) 109 Cal.App.4th 367, 375) and thus has "significant ties" with the court (*ibid*.), acting as an arm of the superior court independent of the prosecution *in supervising probation* in *criminal* matters (*County of Placer v. Superior Court* (2005) 130 Cal.App.4th 807, 813-814), probation officers are otherwise peace officers with duties of law enforcement and are not considered court employees for purposes of applying the exclusionary rule (*Ferguson*, at p. 375).  Patricia fails to advance any argument (beyond her conclusory one-paragraph assertion) to support a finding that a probation officer has any affiliation, let alone employment status, with a *family law* court.

We also do not find any abuse of discretion with respect to the neutrality of the grandparents for purposes of the standard.  Both testified that regardless of their obvious alignment with Aaron, they would not countenance him being under the influence of drugs during his visitation time.  The first mediator also testified that she did not perceive any conflict of interest on the part of the grandparents because they fully understood their responsibilities, which was sufficient to protect Eric without drug testing Aaron.  In addition, the mediator thought the supervision would be in Eric's best interests because it provided further contact with the grandparents.  The trial court could properly credit this testimony.  The goal of the standard (in accordance with section 3200, subdivision (c)) is "to assure the safety and welfare of the child, adults, and providers of supervised visitation.  *Once safety is assured*, the best interest of the child is the paramount consideration at all stages and particularly in deciding the manner in which supervision is provided."  (Standard 5.20(a), italics added.)  Having assured that the grandparents are able to oversee Eric's safety in his visits with Aaron regardless of their relationship with Aaron, and also having evidence that their supervision is in Eric's best interests, the trial court had an adequate basis for appointing them as visitation supervisors.

## IV. No Abuse of Discretion in Declining to Make Drug Testing
## a Condition of Visitation

In keeping with her series of conclusory arguments lacking support in the record, Patricia asserts "[n]o reasonable judge would leave a child's safety and welfare up to persons who do not believe a safety or welfare issue exists," and therefore the trial court abused its discretion in declining to make drug testing a continued condition of visitation. In this vein, she argues (without citation to the record) that the court erred in making a finding that the grandparents "recognized the severity of their son's drug problems" (a finding we cannot find anywhere in the ruling). She criticizes the testimony of the grandparents regarding their evaluation of the extent to which Aaron had addiction issues, but ignores their testimony that in any event they would not allow visits if Aaron did not appear capable. She also asserts the grandparents are unable on their own to determine whether Aaron is impaired (and thus whether he would threaten Eric's safety or disturb him), but does not acknowledge that the "[d]rug expert" *also* testified that Aaron had always appeared to be functional (either during his testing or at the hearing) despite the results of his drug tests. Therefore, the trial court did not abuse its discretion in finding that a testing condition would be an expensive redundancy in protecting Eric.

Although it is not directly related to the previous argument, it would needlessly exalt her remaining two-sentence contention to place it under a separate heading. Patricia again asserts without citation to the record that the trial court made a finding that Aaron was being treated for his drug addiction, even though evidence of any treatment for his use of marijuana was lacking. This "finding" again eludes us. Rather, the trial court gave a lengthy admonition to Aaron about his failure to address his addiction issues in general and his continued excessive use of marijuana in particular. In any event, Patricia utterly fails to demonstrate that this purported finding has *any* materiality, in light of the trial court's award of sole legal and physical custody to her on the basis of Aaron's addiction issues and its order for supervision of any visitation by Aaron with Eric.

19

## DISPOSITION

The minute orders establishing a final custody determination are affirmed.  Each party shall bear his or her own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (5).)


            BUTZ           , J.


We concur:


      NICHOLSON     , Acting P. J.


         HULL          , J.