Filed 4/28/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of VLADIXA and JOHN M. BOSWELL.<br><br>VLADIXA BOSWELL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOHN M. BOSWELL,<br><br>    Defendant and Respondent. | 2d Civil No. B249141<br>(Super. Ct. No. D142630)<br>(Ventura County) |

This is another frivolous family law appeal. As we shall explain, given well-known appellate rules, it was "dead on arrival" at the appellate courthouse. (See *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.) The family law court is a court of equity and fairness. Here the trial court, exercising its broad equitable discretion, refused to enforce a 25 year old judgment for child support arrearages because appellant (mother) concealed the children for 15 years. It specifically ruled that doing so would be "inequitable," that the request was "untimely," "unjust" and "[t]his is just a terribly egregious situation." The trial court did not credit mother's factual explanation. It did credit respondent's (father's) factual explanation, i.e. he did not visit the children or pay child support because mother did conceal the children.

Mother contends that the trial court abused its discretion and applied a faulty legal analysis in making its ruling. In addition, she claims that the trial court should

have credited her declaration that she did not conceal the children. We will affirm the judgment. We will not impose sanctions for this frivolous appeal only because the trial court did err by employing a laches rationale as an independent reason for denying enforcement of the judgment.

*Factual and Procedural Background*

Mother and father dissolved their marriage in October of 1985. The trial court awarded physical custody of the two children, Denise (dob 2/24/80) and John Jr. (dob 3/6/82) to mother. Father was ordered to pay $70 per month child support per child. He did so for two months and then mother "disappeared" with the children. She moved from California, changed the children's names, and did not notify father of their new addresses. Father did not see the children for approximately 15 years, almost their entire minority. After Denise reached the age of majority, mother "gave" custody of John Jr. to father in 1998 when he was 16 years old. He lived with father until he reached majority.

Fifteen years after that, i.e. in 2013, the children were over 30 years old. Then, mother sought to enforce the child support order and sought a judgment of $92,734.94.

*Fairness/Equity Principles*

"Family law court is a court of equity. [Citation.]" *(In re Mariage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 38.) "Those who seek equity, must do equity and have 'clean hands'. [Citation.]" (*Id*. At p. 38.) "Family law cases 'are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity. [Citation.]' " (*In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22-23.)

We need not dwell upon or explicate in detail underlying principles of "active concealment," "estoppel," or "retroactive modification of child support." The only issue here is whether the trial court should have used judicial power to achieve an "inequitable result." (*Kendall-Jackson Winery Ltd. V. Superior Court* (1999) 76 Cal.App.4th 970, 985.) It is sufficient to observe that mother did actively conceal the

2.

children.  This equitably estops her from enforcing a child support judgment.  (*In re Marriage of Damico* (1994) 7 Cal.4th 673, 682-683.)

The trial court found that mother had been "unjust" in her unilateral decision to remove father from the children's lives.  This is tantamount to a finding of "unclean hands."  We reiterate our statement in *Keith G. v Suzanne H.* (1998) 62 Cal.App.4th 853, 862:  "These are some of the dirtiest hands we have seen."

As expressly indicated by the trial court, this was "terribly egregious."  " 'The "clean hands" rule is of ancient origin and given broad application.  It is the most important rule affecting the administration of justice.  "Equity denies affirmative relief for such conduct even though it thereby leaves undisturbed and in ostensible full legal effect acts or proceedings which would affirmatively be set aside but for such consideration: " '  [Citations.]"  (*Padgett v. Padgett* (1962) 199 Cal.App.2d 652, 656.)  We hold that a family law court, in the exercise of its broad equitable discretion, and upon a finding of "unclean hands," may decline to enforce a child support arrearage judgment.  (First holding, see *infra.)*

*Appellate Rules*

Mother contends that the trial court erroneously did not credit her factual showing of why father did not see his children for 15 years.  This is folly.  The trial court was not required to believe her and, sitting as trier of fact, had the power and the right to not do so, just as it had the power and right to believe father.  (See *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)  We do not judge credibility on appeal.  An adverse factual finding is a poor platform upon which to predicate reversible error.  (*Id*, at p. 1097.)  "We sit as a court [of law] to review errors of law and not [claimed] errors of fact."  (*Achen v. Pepsi-Cola Bottling Co.* (1951) 105 Cal.App.2d 113, 125.)

Mother has no appreciation for the rules on appeal, i.e. the substantial evidence rule and the rules relating to the exercise of discretion by the trial court and the review thereof by the Court of Appeal.  (*Estate of Gilkison, supra*, 65 Cal.App.4th at pp.

3.

1448-1449) These rules are well known. They need not be repeated. We hold that, where, as here, the family law court makes a fair and equitable ruling on contested issues of fact, its express or implied factual determinations, are binding on appeal. The appellate court may not substitute its discretion for that of the trial court unless the appellant can demonstrate, as a matter of law, that the trial court's judgment is arbitrary, capricious, whimsical, or exceeds the bounds of reason. (*Id*. at pp. l448-l449.) (Second holding, see *infra*.)

*A Digression on The Use of the Word, "Holding"*

There are two holdings in this opinion. In this portion of the opinion, which is dicta, we explain the proper use of the word "holding." We use the word, "holding" in its traditional and strict legal sense. Witkin uses the latin phrase, "ratio decidendi" to describe the word, "holding." "The ratio decidendi is the principle or rule that constitutes the ground of the decision, and it is this principle or rule that has the effect of a precedent. It is therefore necessary to read the language of an opinion in the light of its facts and the issues raised, to determine (a) which statements of law were necessary to the decision, and therefore binding precedents, and (b) which were arguments and general observations, unnecessary to the decision, i.e. dicta, with no force as precedents." (9 Witkin, Cal. Procedure (5th ed. 2008), § 509, pp. 572-573; see also *Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1168; *United Steel Workers of America v. Board of Education* (l984) 162 Cal.App.3d 823, 834-835.) Here, our two holdings are necessary to our decision and are, therefore, binding precedents.

We comment on the strict use of the word, "hold," because there are cases where the appellate court casually characterizes a trial court's ruling as a "holding" or that the trial court "held" something. (e.g. *Johnson v. Prasad* (2014) 224 Cal.App.4th 74, 76; *Hilton v Superior Court* (2014) 224 Cal.App.4th 47, 51; *Achen v. Pepsi-Cola Bottling Co., supra,* 105 Cal.App.2d at p.124.) Since a trial court cannot create "binding precedent," it cannot "hold" anything. (*Santa Ana Hospital Medical Center*

4.

*v. Bleshe'* (1997) 56 Cal.App.4th 819, 831.)  There are also cases where the appellate courts casually use the word "hold" when it actually means, conclude.  For example, the *Hilton* court said:  "We hold the ruling of the trial court was erroneous as an act in excess of the court's jurisdiction."  (*Hilton v. Superior Court, supra,* 224 Cal.App.4th at p. 51; see also *City of Palmdale v. City of Lancaster* (2014) 224 Cal.App.4th 978, 985; *People v. Biane* (2013) 58 Cal.4th 381, 398.)

Extreme care should be taken in the choice of words for a true holding.  As Witkin has said:  "A conclusion in which the holding on legal issues is clearly stated is common and highly desirable."  (Witkin, Manuel on Appellate Court Opinions (1977) § 78, p. 137.)

Dean Wigmore states:  "[T]here is one thing that it [an opinion] must do, viz., it must *state plainly the rule upon which the decision proceeds.*  This is required, in theory, because the Court's function is to declare the law . . . ."  (Leflar, *Appellate Judicial Opinions,*  (1974) ch. 7, p. 155.)

*Laches*

As a separate basis for denial of the motion to enforce a child support arrearage judgment, the trial court ruled that there was a laches bar, i.e. she waited too long to enforce the order.  This theory is erroneous as a matter of law and father so concedes.  Family Code section 291 subdivision (d) provides that the defense of laches only applies to child support owed to the state.  (See *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 182; Hogoboom & King, Cal. Practice Guide, Family Law (The Rutter Group, 2013) [¶] 6:739, p. 6-293.)

*Sanctions Vel Non*

Although the appeal is frivolous, we elect not to impose sanctions because mother believes, and apparently prosecuted this appeal, because of the trial court's ruling on laches.  This is the only thing that saves her and her attorney from a sanction order.

*Disposition*

The judgment is affirmed.  Costs are awarded to respondent.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

6.

Roger Lund, Judge

Superior Court County of Ventura

_____

Ross A. Spector, Spector & Bennet, a Professional Corporation, for Appellant.

Jeffrey S. Graff, for Respondent.