Filed 10/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of MARK and TERRI BITTENSON.<br><br><br>MARK BITTENSON,<br><br>    Appellant,<br><br>v.<br><br>TERRI BITTENSON,<br><br>    Respondent. | 2d Crim. No. B288233<br>(Super. Ct. No. D360477)<br>(Ventura County) |

Family law practitioners should read this opinion with the following in mind: "[F]amily law court is a court of equity . . . ." (E.g., *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1174.) Appellate attack upon a discretionary trial court ruling is an "uphill battle." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448.)

Mark Bittenson (husband) appeals a pretrial discretionary order limiting his $250,000 pendente lite lien for attorney fees in

a marital dissolution action.  (Fam. Code, § 2034, subd. (a).)[1]
Husband's trial attorney recorded three Family Law Attorney's
Real Property Liens (FLARPLs) on the family residence before it
was sold.  (§ 2033, subd. (a).)   The trial court reduced the lien
because the parties were contesting the date of marital
separation and the full $250,000 lien amount could impair the
overall equal division of community assets and debts.  We affirm
and conclude that section 2034, subdivision (c) permits a family
law court to reduce or limit a FLARPL after the lien is recorded.

*Procedural History*

In 2013, husband filed a petition to dissolve his 26-year
marriage with Terri Bittenson (wife).  During the dissolution
proceeding, she moved out of the family residence so it could be
sold by a receiver.  In 2017, husband's trial attorney recorded
three FLARPLs totaling $250,000[2] as security for the payment of
his on-going attorney fees.  Wife filed objections claiming that the
FLARPL notices were defective, that the $250,000 lien amount
exceeded husband's community property share of the escrow
proceeds, and that some of the FLARPL funds were being used to
pay husband's defense costs in a civil action filed by wife.
Husband's opposition papers stated that the net escrow proceeds

---

[1] All statutory references are to the Family Code unless
otherwise stated.

[2] Husband's attorney filed a $100,000 FLARPL on February
8, 2017, a $100,000 FLARPL on April 6, 2017, and a $50,000
FLARPL on October 02, 2017.  None of the FLARPLs were
personally served on wife as required by section 2033, subdivision
(b).  On November 6, 2017, a month before escrow closed, the trial
court ordered that the escrow proceeds be placed in a blocked
account to be distributed at a later date.

2

was $622,000 and that the $250,000 lien did not encumber wife's community half interest ($311,000) of the sale proceeds. Husband's trial attorney acknowledged that she was representing husband in a domestic violence action filed by wife (*Terri Bittenson v. Mark Bittenson* (Super. Ct. Ventura County, 2015, No. 56-2015-00475085-CU-PO-VTA)) and had already billed $207,000 in attorney fees "for family law issues." Counsel stated that husband would incur thousands of dollars in additional fees on "additional litigation concerning these FLARPLs, . . . having to respond to what can only be a moot argument as my office has now released it's liens, as a condition to being paid."

Relying on section 2034, the trial court found there was good cause to limit the FLARPLs to protect wife's community interest in the escrow proceeds. The trial court ordered husband's trial attorney to deposit $100,000 of the funds into a blocked account and released the remaining $150,000 in satisfaction of the FLARPLs.

### FLARPLs – What's in a Name?

"Shakespeare asked, 'What's in a name?'" (*Corona Fruits & Veggies, Inc. v. Frozsun Foods, Inc.* (2006) 143 Cal.App.4th 319, 321.) We supply an answer only for FLARPLs which have been characterized as a "risky" way to pay one's attorney's fees. (*Turkanis & Price, supra*, 213 Cal.App.4th at p. 352.) The name should have a qualifier appended: "conditional" FLARPL." A family law treatise warns family law practitioners to *"Use Secured Liens Sparingly*: [¶] . . . [T]he 'security' provided by recording the [FLARPL] can be illusory. For example, the liened property's value may decline substantially due to market fluctuations, or the facts of the case may 'eat up' [the] client's interest therein. Moreover, a court may revisit the propriety of

3

the lien at *any* time and, in an appropriate case, order the lien expunged . . . ." (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2019) ¶ 1:302, p. 1-115.)

We review for abuse of discretion. (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 345 (*Turkanis & Price*).) Pursuant to section 2033, either party may encumber his or her interest in community real property to pay reasonable attorney's fees for purposes of retaining or maintaining legal counsel in a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties. (§ 2033, subd. (a).) The encumbrance is known as a FLAPRL and "attaches only to the encumbering party's interest in the community real property." (*Ibid*.) "Section 2033 sets forth notice requirements and the procedure for obtaining a FLARPL. To be valid, a notice of lien must be served personally or on the other party's attorney of record at least 15 days before recordation. The notice must include a description of the real property, the party's belief as to fair market value, the amount of the attorney fees and other information. (§ 2033, subd. (b).) Further, the statute sets forth the procedure for an objection by the unencumbering spouse. (§ 2033, subd. (c).)" (*In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 343.)

The trial court found that the section 2033 notice defects were moot because the FLARPLs were recorded before wife filed her objections. Section 2033 provides that the nonencumbering spouse may file ex parte objections to the lien *prior to its recording*. (§ 2033, subd. (c).) That ship has sailed. After the FLARPL is recorded, section 2034 subdivision (c) vests the family law court with the "'jurisdiction to resolve *any dispute* arising from the existence of a [FLARPL].' [Citation.]" (*Turkanis &*

4

*Price, supra*, 213 Cal.App.4th at p. 350 [trial court may expunge a FLARPL after it is recorded].) Section 2034, subdivision (a) provides in pertinent part: "On application of either party, the court may deny the [FLARPL] lien described in Section 2033 based on a finding that the encumbrance would likely result in an unequal division of property because it would impair the encumbering party's ability to meet his or her fair share of the community obligations *or would otherwise be unjust under the circumstances of the case.* The court may also for good cause limit the amount of the [FLARPL] lien." (Italics added.)

Husband argues there is no evidence that the $250,000 lien will result in an unequal division of property or impair husband's ability to meet his fair share of the community obligations. Husband further complains that wife's objections only address the third FLARPL for $50,000. Wife, however, requested that the trial court consider all three FLARPLs and called it a "robbery of the community assets." The trial court was asked to limit the $250,000 lien because husband and wife were contesting the marital separation date which substantially affected the value of the community assets and debts.[3] (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 8:110.1, p. 8-45.)

The trial court found "there are substantial differences in the parties' positions as to the date of separation, the value of assets and debts and the characterization of the same.

_____

[3] Husband submitted a community property balance sheet based on an October 23, 2010 separation date. Using that separation date, a forensic accountant opined that wife owed husband a $475,290 equalization payment. After husband and wife bifurcated the issue for purposes of trial and a status only judgment, the trial found that the date of separation was May 15, 2013. That is the subject of a separate appeal. (B294136.)

[Husband] asserts a date of separation of 2010, which increases his reimbursement rights and decreases the value of the community interest in his deferred compensation plans.  Further, there is a settlement from his former employer which may have a significant community property interest if he does not prevail on the date of separation issue.  [Wife] has raised an issue of [husband's] withdrawal of funds from a community 401(k) account.  [Husband] contends the funds were used to pay community debts; however this has not yet been adjudicated.  If [wife] prevails on her date of separation, the employment settlement and the 401(k) withdrawal, there will not be sufficient funds to equally divide the community estate without invading [husband's] deferred compensation plan as [husband] suggests.  These funds may not be immediately available to [wife] without incurring taxes and penalties which may result in an unequal distribution of the community estate."

Husband argues that the trial court lacked jurisdiction to limit the FLARPL lien because the $250,000 was released to husband's trial attorney when escrow closed.  But that occurred to facilitate the sale and was done at husband's request.  The trial court ordered that the $250,000 be held in a blocked account until the lien amount was adjudicated and retained jurisdiction over the entire $250,000.  Under the doctrine of equitable estoppel "[h]e who takes the benefit must bear the burden."  (Civ. Code, § 3521.)  Here, $150,000 of the escrow funds (the benefit) was released to husband's trial attorney but the remaining $100,000 (the burden) will remain in a blocked account until the marital separation date is determined.  "[T]he existence of . . . estoppel . . . is a question of fact for the trial court, whose determination is conclusive on appeal unless the opposite

6

conclusion is the only one that we can reasonably draw from the evidence. [Citations.]" (*Turkanis & Price*, *supra*, 213 Cal.App.4th at p. 353.)

Section 2034, subdivision (c) provides that the trial court has "jurisdiction to resolve *any dispute*" arising from the FLARPLs. (Italics added.) "[T]his broad catchall provision gives the court jurisdiction to resolve disputes over the propriety of existing FLARPLs, whenever they may arise. The plain language of the subdivision does not impose any timing requirement or otherwise limit the court's ability to revisit the propriety of a FLARPL. Moreover, as this subdivision is separate from other parts of the statutory scheme relating to the ex parte objection process (§ 2033, subd. (c)), it contemplates disputes apart from the ex parte objection process. . . and . . . contemplates disputes when the FLARPL is already in 'existence.'" (*Turkanis & Price*, *supra*, 213 Cal.App.4th at pp. 350-351.) That would include disputes after the FLARPL is recorded. A trial court may revisit the propriety of the lien at any time and, in an appropriate case, expunge or limit the lien. (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 1:302, p. 1-115.)

We reject the argument that section 2033, which addresses the ex parte objection procedure before a FLARPL is recorded, restricts the trial court's discretion to limit the amount of a FLARPL after it is recorded. "To read [section 2034, subdivision (c)] as merely referencing to the ex parte objection process [i.e., section 2033, subdivision (c)] and no other disputes would render it superfluous, and we are to avoid interpretations that render any part of a statute superfluous. [Citation.]" (*Turkanis & Price*, *supra*, 213 Cal.App.4th at p. 351.)

*Disposition*

The judgment is affirmed.  Wife is awarded costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

8

Joann Johnson, Judge

Superior Court County of Ventura

_____

Debra A. Opri, for Appellant.

Law Offices of Jeffrey D. Johnsen and Jeffrey D. Johnsen for Respondent.