Filed 8/1/22  Melnikov v. Harrington CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NOLEEN MELNIKOV,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TIMOTHY HARRINGTON,<br><br>    Defendant and Respondent. | A163557<br><br>(San Francisco County Super. Ct.<br>No. CCH21583672) |

Noleen Melnikov appeals the denial of her petition for a civil harassment restraining order against her former professor Timothy Harrington.  Melnikov's petition alleges a multi-year cyberstalking campaign against her by Harrington.  Omitted from these allegations, however, was the fact that a still-current restraining order had been issued against Melnikov for harassing Harrington.  Upon discovering this omission, the trial court denied relief, finding that Melnikov deliberately misled the court and lacked credibility.

We will affirm.  The trial court acted well within its discretion in rejecting her petition for lack of credibility.

1

# I. BACKGROUND

The only undisputed fact in this matter appears to be that Harrington was Melnikov's graphic design professor for several courses at San Francisco Community College (the College).

## A. *Melnikov's Petition*

Melnikov's version of the events begins in March 2018. She alleges in her Request for Civil Harassment Restraining Orders (the petition) that she then discovered "unusual activity on [her] Facebook account," "Gmail account," and "Facebook Messenger [account]." This unusual activity soon "bec[ame] so routine" that "[her] husband" noticed it as well. She hired a "professional to perform a forensic investigation to check [her] accounts for hacking." The result of the investigation, according to the petition, was discovery of "IP addresses [associated with] the home address of Respondent in San Francisco." Then, "[i]n August 2019 his conduct evolved when [Harrington] began to manipulate [her] work and school files." Melnikov confesses she "ha[d] no idea why he chose [her] to attack and follow when [their] relationship was strictly professor and student." "In fact," the petition further alleges, "[Harrington] was a good professor." She spent thousands of dollars on the forensic expert, and felt "threatened, abused and harassed" by this conduct.

The closest Melnikov comes to disclosing the restraining order currently in force *against her* is the following. She discloses that she suffered "damage[] [to her] reputation at school," "when [Harrington] filed his restraining order which stated [she] was copying him online." But, the petition alleges, "[she] ha[s] never done so nor do[es] [she] have any idea how that is done." "[She] simply had no mental or emotional capacity to fight back when [Harrington] filed that TRO against [her] and due to missing court, the RO was issued."

The petition goes on to allege that Harrington's harassment continues at least through January 2021 when, on her new work laptop, she noticed "things are still being clicked on as notifications that [she] did not personally click."

Her petition also included a supporting declaration from her husband, Sergey Melnikov, which declared he had noticed Harrington engaging in stalking behavior both at school and school-organized outings.

The final exhibit to her petition was submitted by Digital Forensics Corporation, a private forensics firm. The exhibit consists of a declaration from an employee, Sean Quellos, and a report. The declaration summarizes the conclusion of their investigation as follows: "[O]ur evaluation of [Melnikov's] devices and accounts led our investigation to discover a matching IP address indicated by logging into a Facebook account owned by [Melnikov], and an email received by the client from tharring@ccsf.edu 'Timothy Harrington'. The IP address 147.144.3.239 is registered to City College of San Francisco."

### B. *Harrington's Response*

Harrington filed a form response to Melnikov's petition (the response), entitled "Response to Request for Harassment Restraining Orders," in which he attached several exhibits, including: a 12-page, single-spaced narrative description of his harassment by Melnikov; his *currently active* restraining order against Melnikov for her harassment of *him* (filed January 28, 2019); a report issued by the College's Title IX Department explaining its conclusion that Melnikov's stalking behavior amounted to "sexual harassment, cyber-harassment and stalking" (itself 10 pages and single-spaced); a "Notice of Code of Student Conduct Violation" issued by the College to Melnikov; Harrington's complaint to the College (itself accompanied by 13 exhibits); and a declaration by a police officer from the San Mateo Police Department.

3

According to the above documents, Melnikov's harassment of Harrington was provoked by her disappointment in receiving a "B" rather than an "A" for her final class grade. She was a student in four of his classes between Fall 2017 and Fall 2018. In December 2018, Harrington's faculty email address began receiving spam from sexually explicit websites. After complaining about her grade in January 2019, the spam traffic intensified, and he received emails implying that someone created fraudulent accounts in his name to rent expensive vehicles. Then Melnikov began sending him online messages through a Web site portal, linked to pictures of herself and her name, making sexual comments and demands that he change her grade. That same month, Harrington received many messages on his home answering machine, which he transcribed for purposes of inclusion in this record. We have received this list, and it includes many sexually explicit comments and similar sounds.

Harrington thereafter filed a complaint with the College alleging she had violated the student conduct code. He escalated his administrative relief action soon thereafter with a subsequent "Unlawful Discrimination" filing with the Title IX department, detailing Melnikov's campaign of cyberstalking, and included a new allegation that Melnikov set up a fake Facebook account in his name. The College investigated for four months, and its IT Department reviewed the emails to Harrington's account. It was able to correlate the San Mateo IP address from the various email list requests with the IP address used by Melnikov to log into her email account, suggesting that Melnikov was the source of the online harassment Harrington was experiencing. In response to the investigation, Melnikov first asserted her version of events that she was the victim of a cyberstalking campaign conducted by Harrington. The College IT Department concluded

4

Melnikov's excuse was not technologically plausible, and the College concluded that none of her allegations were credible. Among other conclusions, the College found Melnikov displayed "a propensity for dishonesty." For example, she included a falsified copy of her cell phone bill which deleted a call to Harrington's home phone number. The investigation concluded that Melnikov "has committed several serious and egregious violations of Board Policy, the Code of Student Conduct, as well as federal and state law, including potential violation of a court order," and on that basis recommends that "serious disciplinary action is warranted." Melnikov was then expelled from the College.

A declaration from the San Mateo police department, attached to the complaint, showed that Melnikov continued to harass Harrington through July 2019. Sergeant Manion was tasked with investigating a report Melnikov filed with his department claiming that someone was accessing her online accounts and deleting her emails. She believed Harrington was responsible. He summarized the result of his investigation as follows: "Based on my review of the evidence, I concluded that there was no evidence to support [Melnikov's] claims and that [Melnikov] provided false information to Mr. Dean [Chief of Public Safety for the College] regarding [Harrington]."

## C. *Trial Court Proceedings*

On August 4, 2021, the trial court held a hearing on the petition in which both parties were present and represented by counsel. The court stated that after it reviewed Harrington's response, it would deny the petition, finding Melnikov had used the judicial system as a tool to further her harassment of Harrington:

"Petitioner, I want you to know that the Court is shocked by your behavior. You misled the Court. [¶] And counsel, I hope you're listening, too.

5

[¶] . . . [¶]

"There have been investigations in this case that were not brought to the attention of the Court. I was not told about the fact that there was an investigation that found that the Respondent had been harassed by the Petitioner. I was not made aware that there had been investigations in another county that had found that the Respondent's stories were fabricated, not supported by any evidence. And I find that this Court was used by the Petitioner.

[¶] . . . [¶]

"I feel that this Court was used to harass the Respondent. Clear evidence. All of the evidence that was missing is the evidence against your client. And I am shocked that that would happen in this courtroom."

In so ruling, it admitted all of the response, including its exhibits, without objection by Melnikov. The court also found Melnikov not credible, stating: "I don't believe any of it. . . . I don't believe it." The court concluded the hearing by tentatively ruling it would grant a properly noticed motion for attorney fees on the basis that, "I believe the whole thing was fabricated."

Melnikov timely appealed.

## II. DISCUSSION

### A. *Standards of Review*

We review a trial court's ruling on a request for a restraining order for abuse of discretion. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.) We review a trial court's factual findings, such as a finding of witness credibility, for substantial evidence. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.) Under this deferential standard of review, we do not reweigh a trial court's credibility findings. "An adverse factual finding is a poor platform upon which to predicate reversible error. [Citation.] 'We sit as a court [of law] to review errors of law and not [claimed]

6

errors of fact.' " (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175.) "[T]he rule of appellate deference to trial court credibility determinations is the same for written declarations as for oral testimony (even though, with written declarations, witness demeanor is not observed)." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021), ¶ 8:42.1.)

## B. *The Trial Court Did Not Err*

With no appreciation for the deference we must give to trial court fact-finding, Melnikov argues that the trial court erred in its finding that she had not disclosed Harrington's restraining order against her. She also argues that to the extent the trial court wanted more information about this other case against her, it "failed to look up the case," and that is not her fault. She then insists that she was the victim of Harrington's harassment.

We decline to substitute Melnikov's version of events for Harrington's on appeal. The judgment below is presumed correct (see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609), and all Melnikov does in an effort to overcome the presumption is invite us to disregard the governing standard of review. That is insufficient. To resolve this appeal, we must first examine whether substantial evidence supports the trial court's finding that Melnikov lacked credibility. We must then assess whether, given that adverse finding, the trial court acted within its discretion in denying her petition.

We conclude that ample—not merely substantial—evidence supports the trial court's factual finding that Melnikov lacked credibility. Although she disclosed that Harrington "filed that TRO against me and due to missing court, the RO was issued," she did not disclose that she was under the force of this order at the very time she filed to protect herself from Harrington. The effect of her failure to do so led the court to set her application for hearing, and, in so doing, possibly become complicit in Melnikov's further harassment

7

of Harrington, stating, "I feel that this Court *was used* to harass the Respondent." (Italics added.) As a result, substantial evidence supports the court's adverse credibility finding for Melnikov; and given no evidence then remains to support the petition, but instead only evidence *against* the veracity of the petition remained before the court, the court acted within its discretion in declining to issue a restraining order against Harrington.

## III. DISPOSITION

The judgment is affirmed. Costs are awarded to Harrington.

_____
Streeter, J.

WE CONCUR:


_____
Pollak, P.J.


_____
Brown, J.


*Melnikov v. Harrington  A163557*