Filed 1/7/26  Lee v. Kim CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| EUNJU LEE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>YOUNG WOO KIM,<br><br>    Defendant and Appellant. | G064717<br><br>(Super. Ct. No. 30-2021-01210557)<br><br>O P I N I O N |

Appeal from a judgment and a postjudgment order of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Kevin H. Jang for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

Eunju Lee and Young Woo Kim were in a dating relationship for approximately three months. When the relationship ended, the two got into a physical altercation inside Kim's vehicle. Lee sued Kim for assault and battery, and both parties testified at trial. The jury found in Lee's favor and awarded her compensatory and punitive damages. Kim then filed an unsuccessful motion for new trial and motion for judgment notwithstanding the verdict (JNOV).

Kim appeals both the judgment and the trial court's denial of his motion for JNOV, arguing the evidence was insufficient to support the verdict and the punitive damages award. Kim forfeited these arguments by filing a clearly defective brief, and we therefore affirm the judgment and order denying the motion for JNOV.

STATEMENT OF FACTS[1]

Lee and Kim met in March 2021 at the Korean bar where Lee was working. A few days later, they began dating. At the time he met Lee, Kim had been married for about 14 years.

While they were dating, Kim gave Lee expensive gifts and paid for meals, alcohol, and shared-ride services. He also gave her money for general spending, including money for the rent on her apartment.

In May 2021, Kim told Lee he wanted to enter a transaction with another car dealer to sell a rental car and give Lee the money he made on the

---

[1] We have drawn these facts from the reporter's transcript filed in connection with this appeal. Kim did not cite to these facts or summarize them in his brief.

sale.[2] Kim could procure the car, and Lee could finance the purchase using her name, because her credit was good.

The vehicle purchase price was $5,000. According to Lee, Kim told her he would give her $750 per month to make the loan payments. Lee testified Kim never made the monthly payments, and Lee had to pay them herself to bring the loan current.

On May 28, 2021, the two were to meet at a Korean barbecue restaurant. Kim still owed Lee $4,000 for financing the car purchase. Lee was going to tell Kim she was ending their relationship because she met someone else.

At the restaurant, Lee raised the issue of the $4,000. Kim told her he had the money at his hotel, and if she went to the hotel with him, he could give it to her. Lee then told him she thought they should stop seeing each other, and he began yelling and using profane language.

Lee suggested Kim should leave the restaurant first, go to the hotel, and she would follow in a taxi. Kim refused. After entering and exiting the restaurant several times, Kim told Lee he would not get angry anymore.

Once Kim had calmed down, Lee left with him in his car. Kim insisted he needed to get a cup of coffee because he was feeling intoxicated. Lee told Kim he could drive to a coffee shop, but then he needed to take her home. He agreed.

The two drove to a coffee shop, and Kim went inside to get coffee. Lee began talking on her cell phone inside the car. Kim returned to the car with his coffee and began to drive.

---

[2]  Kim was part owner of a rental car company.

Lee noticed Kim was not driving toward her apartment and was instead driving to his hotel. She told Kim she would not go to the hotel, opened the car door, and exited the vehicle in the middle of the street. Kim lowered his car window and told Lee to get back in the car. She reentered the car because he said he was sorry and would take her home. As soon as Lee got back in the car, Kim punched her on the left side of her head.

Kim began driving back toward the restaurant, but he continued beating Lee. She attempted to call 911 on her cell phone, but Kim took the phone and continued to beat her. Lee was fearful; she tried to honk the horn and open the window and yell. Kim pulled into the restaurant parking lot and parked. He got out of the vehicle and stomped on Lee's phone.

Lee found another phone in the car and called 911. Kim took the second cell phone and began to destroy it as well. Then he pulled Lee out of the car by her collar. Traffic camera video of the scene showed Lee being removed forcefully from the vehicle by Kim.

Police arrived on scene about two minutes after Lee called them. The responding detective observed that Lee was "hysterical" and "emotional" while Kim was "more confused and occupied." The detective did not recall observing any physical injuries on Lee, but remembered that Lee was having an anxiety attack. Lee went to the hospital the next day complaining of bruises and pain.

PROCEDURAL HISTORY

Lee filed a civil complaint against Kim. The operative first amended complaint alleged causes of action for (1) assault, (2) battery, and (3) intentional infliction of emotional distress.[3] A jury trial was held in 2024.

_____

[3] The pleading was not included in the clerk's transcript on appeal. On our own motion, we augmented the record to include the first

4

Along with her own testimony, Lee presented the testimony of Dr. Phillip Lim, a medical expert on pain management and one of Lee's treating physicians. Dr. Lim confirmed Lee had sought medically necessary treatment at the hospital after the altercation with Kim. She also sought psychological treatment.

Dr. Lim testified that Lee received chiropractic care for two months. However, Lee continued to have persistent neck pain and headaches as a result of the incident. Dr. Lim treated her with cervical epidermal injections to reduce inflammation and pain. Dr. Lim's opinion was that Lee had suffered a brain injury.

The jury found for Lee. Lee was awarded a total of $194,000 in damages, which included $69,000 in compensatory damages and $125,000 in punitive damages.

Kim filed a motion for new trial, arguing (1) the verdict was against the weight of the evidence; (2) the damages award was excessive; and (3) Lee's counsel had engaged in prejudicial misconduct in front of the jury. He also filed a motion for JNOV based on similar grounds. The trial court denied both motions.

## DISCUSSION

### I.

### KIM'S ARGUMENTS REGARDING INSUFFICIENCY OF THE EVIDENCE ARE FORFEITED

Kim makes two arguments on appeal. First, he contends Lee's trial testimony—which he characterizes as "contradictory"—was insufficient to establish the elements of assault and battery. Second, he argues Lee failed

amended complaint. (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

5

to establish malice or despicable conduct sufficient to support her punitive damages claim.

Contrary to Kim's urging, we do not review these issues de novo. Rather, we review them for substantial evidence. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188; *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48, 60–61.) However, Kim has forfeited his substantial evidence arguments by failing to "fairly summarize the evidence at trial." (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 598 (*Symons*).)

"'[I]t is presumed that the evidence is sufficient to support [the trier of fact's] factual findings, and it is the appellant's burden to demonstrate that it does not . . . . And in furtherance of that burden, the appellant must fairly summarize the facts in the light favorable to the judgment.' [Citation.] 'To overcome the trial court's factual findings,' the appellant is ""required to set forth in [his] brief all the material evidence on the point and not merely [his] own evidence. Unless this is done the error is deemed to be [forfeited]."" [Citations.])" (*Symons, supra*, 99 Cal.App.5th at p. 598, italics omitted.)

Kim's opening brief does not comply with the requirements of California Rules of Court, rule 8.204, let alone fairly summarize the material facts. It does not summarize any evidence at all. Throughout the brief, Kim makes references to facts without citing to the record. In fact, there are only four record citations in the entire brief, and each is unclear. Kim cites "the Court Transcript," which is not part of the official record. To the extent he intends to cite to the reporter's transcript of trial testimony, we are unable to

6

match the testimony he purports to summarize with the page numbers he cites therein.[4]

Kim's failure to objectively summarize the facts is but one of several serious problems in the brief. As we noted *ante*, Kim advocates for an incorrect standard of review. He cites to inapposite authority as well. In citing to *Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1154, Kim cites a page in the opinion discussing attorney fees, which are not at issue in this appeal. Kim also misstates and distorts the standard for awarding punitive damages under Civil Code section 3294.[5]

Perhaps most egregious is Kim's misstatement and mischaracterization of the trial testimony. Kim claims Lee testified she was texting with a third party while Kim was assaulting her.[6] In fact, Lee

---

[4] We were able to locate the pages of trial testimony Kim cites in the clerk's transcript because Kim attached excerpts from the trial transcript as exhibits to his motion for new trial. But the cited excerpts do not support Kim's characterization of the evidence. In particular, Kim's contention that Lee testified that "she screamed and pretended to be the victim of violence" is wholly unsupported by the record.

[5] Kim contends Lee failed to show he intentionally engaged in despicable conduct. She did not have to. Punitive damages may be awarded where there is clear and convincing evidence the defendant "has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) Where the causes of action are intentional torts—as they are here—the plaintiff can obtain punitive damages by demonstrating by clear and convincing evidence the defendant engaged in conduct "intended . . . . to cause injury to the plaintiff." (*Id.*, § 3294, subd. (c)(1).) A physical assault can meet this standard.

[6] Presumably, Kim says this to attack Lee's credibility. But "[w]e do not judge credibility on appeal. An adverse factual finding is a poor platform upon which to predicate reversible error." (*In re Marriage of Boswell*

testified she did not recall texting with a third party while the assault was taking place; and she doubted she could have done so. She even responded to Kim's counsel's questioning with: "How can I send [a] text message while I was getting hit?"

Kim also claims Dr. Lim "confirmed that there is no clear causation for all the medical records." But Kim does not give the full picture. Dr. Lim acknowledged he was not aware of prior incidents which may have contributed to Lee's injuries, and these prior incidents might impact his opinion on causation. However, he thought the altercation with Kim "would still be part of" the cause of Lee's injuries.

"'[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.' [Citation.]" (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

Because Kim has forfeited his argument as to the sufficiency of the evidence, we affirm.[7]

---

(2014) 225 Cal.App.4th 1172, 1175.)

[7] Even if the issue had not been forfeited, we would still affirm the judgment on the merits as there is substantial evidence supporting each cause of action and the damages awarded.

## DISPOSITION

The judgment and postjudgment order denying the motion for JNOV are affirmed. Respondent to recover her costs on appeal, if any.

BANCROFT, J.*

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.