Filed 2/25/26  Third Laguna Hills Mutual v. Joslin CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THIRD LAGUNA HILLS MUTUAL,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFF JOSLIN,<br><br>Defendant and Appellant. | G064634<br><br>(Super. Ct. No. 30-2017-00957937)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge. Affirmed.

Olson Law Firm and Shawn M. Olson for Defendant and Appellant.

Roseman Law and Ryan A. Stubbe for Plaintiff and Respondent.

\*          \*          \*

Under the business judgment rule, corporate directors ordinarily cannot be held civilly liable for their good faith actions taken on behalf of the corporation. (Corp. Code, §§ 309, 7231.)[1] The business judgment rule is an affirmative defense that applies to the good faith actions of an incorporated homeowners association (HOA). (*Ridley v. Rancho Palma Grande Homeowners Assn.* (2025) 114 Cal.App.5th 788, 804 (*Ridley*).)

Here, plaintiff Third Laguna Hills Mutual ("the HOA") filed a complaint generally alleging defendant homeowner Jeff Joslin had violated some of its Conditions, Covenants, and Restrictions (CC&Rs). Joslin filed a cross-complaint generally alleging the HOA had committed various torts against him, including intentional infliction of emotional distress.

Prior to a trial, the HOA's complaint was dismissed on its own motion. After a court trial—strictly as to Joslin's cross-complaint—the court found the HOA had acted in good faith, and therefore it was not civilly liable to Joslin under the business judgment rule. Joslin appeals.

We find substantial evidence to support the trial court's factual finding that the HOA acted in good faith. Thus, we affirm the judgment.


I.

FACTS AND PROCEDURAL BACKGROUND

In 2012, Michael Cohan acquired title to a condominium (the "Unit") after his mother passed away. The Unit is located within a senior community (age 55 and over) in the Laguna Woods Village. The HOA encompasses more than 6,000 homes. The community is managed by Village

[1] Further undesignated statutory references are to the Corporations Code.

2

Management Services (VMS).

Starting in January 2014, Cohan committed numerous violations of the CC&Rs, which included: noise violations; illegal occupancy (having renters in the Unit under the age of 55); and routinely leaving clutter around the Unit. This resulted in multiple notices from the HOA, frequent disciplinary hearings, and increasing fines.

In October 2014, Cohan received a $125,000 loan from Joslin, secured by a deed of trust. Joslin was an experienced investor in trust deeds. Joslin's loan represented nearly half of the value of the Unit ($255,000). Cohan agreed to repay Joslin's loan by making monthly payments in the amount of $936.46. The deed of trust gave Joslin the right to foreclose if Cohan failed to make the monthly payments.

In February 2016, Cohan stopped making regular monthly payments, but rather than foreclosing on the Unit, Joslin made additional loans to Cohan. According to Joslin, Cohan "was just begging me for more funds." Cohan purportedly told Joslin that "he was going to sell the [Unit], but he needed additional funds . . . to fix it up." Throughout 2016, Cohan continued to violate the CC&Rs, which resulted in further notices, hearings, and fines. By the end of 2016, Cohan owed Joslin $183,980.76.

On February 6, 2017, Cohan signed a Grant Deed, conveying the Unit's title to Joslin. Cohan and Joslin also executed a Residential Lease with Option to Purchase. According to Joslin, the new financial arrangement "seemed to make sense, that I wouldn't have to go through a foreclosure." Joslin said he gave Cohan "a lease option for one year to sell the property, pay my loan off and he could keep the proceeds from that."

On March 29, 2017, Cohan attended an HOA disciplinary

3

hearing. The HOA notified Cohan that he was liable for about $5,000 in monetary penalties. Cohan then informed the HOA that Joslin was the Unit's "new prospective owner." Thereafter, the HOA ran a title search and discovered for the first time that as of February 6, 2017, Joslin had been the deeded owner of the Unit.[2] The HOA obtained Joslin's address and notified him by mail of the next upcoming disciplinary hearing concerning the Unit.

On May 16, 2017, Joslin attended an HOA hearing. The VMS staff recommended to the HOA's board that the monetary fines that had been imposed since February 6, 2017, should now be charged to Joslin for the ongoing unlawful occupancy, and nuisance violations. In response, Joslin told the board that he was in the process of trying to remove all of the Unit's occupants, and if that was not successful, then he was going to proceed with an unlawful detainer action.

On June 20, 2017, there was another HOA disciplinary hearing. The HOA board voted to impose $2,000 in fines upon Joslin for the CC&R violations (since February 6, 2017), but the board chose to hold those particular fines in abeyance if Joslin showed proof that he was moving forward with an unlawful detainer against Cohan and the other individuals who were currently occupying the Unit.

On July 16, 2017, Cohan and the other occupants purportedly vacated the Unit. The following month, the HOA sent Joslin an invoice for $1,336.60 in legal fees associated with curing the recent CC&R violations.

---

[2] Joslin claimed at trial that he mailed a copy of the Grant Deed to the HOA in February 2017, but in its statement of decision, the trial court found Joslin not to be a credible witness. We interpret the evidence in the light most favorable to the trial court's judgment; therefore, throughout this statement of facts we have tended to credit the evidence which best supports the trial court's factual findings.

4

According to the HOA, this particular charge was never waived or paid. The HOA also billed Joslin for common area fees that were due from February to May 2017 ($1,371.60). According to the HOA, these charges were also never paid by Joslin.

*Court Proceedings*

On November 28, 2017, HOA filed a complaint against Joslin and Cohan for (1) breach of the governing documents, (2) fraudulent conveyance, and (3) damages. The HOA averred that it was incorporated in the State of California. The HOA alleged that Joslin and Cohan allowed underage tenants to reside in the Unit, and were responsible for various other nuisance violations. The HOA further alleged Joslin and Cohan had fraudulently conveyed the Unit "so as to avoid or mitigate damages and other amounts owed to the [HOA]." The HOA sought to recover over $50,000 for various unpaid assessments, penalties, late charges, and attorney fees.[3]

On October 9, 2018, Joslin filed a cross-complaint (the trial court granted leave). Joslin alleged 10 causes of action: (1) intentional interference with existing contractual relations, (2) intentional interference with prospective economic advantage, (3) unfair competition, (4) breach of implied-in-fact contract, (5) tortious and wrongful ouster, (6) tortious interference with contractual relations, (7) tortious interference with prospective economic advantage, (8) intentional infliction of emotional distress, (9) private

---

[3] In December 2017, Joslin applied for HOA membership, but his application was denied because of the alleged outstanding fines and fees.

nuisance, and (10) injunctive relief. [4]

On November 13, 2018, the HOA filed an answer to the cross-complaint. As its sixth affirmative defense, the HOA asserted that it was not liable to Joslin under the business judgment rule because its "actions were all in good faith . . . and in the honest belief that any action taken was in the best interests of [the HOA] and its owners."

On November 16, 2023, the trial court granted a motion by the HOA to dismiss its complaint without prejudice. [5]

On March 20, 2024, a court trial began. Joslin testified on his own behalf. VMS operations manager Francis Gomez testified on behalf of the HOA. Gomez testified Joslin was a "member" of the HOA as a recorded deed owner; however, because Joslin's membership application had not yet been approved by the board, he did not "have the rights of membership." Gomez generally testified that all of the HOA's actions with respect to Joslin were consistent with the CC&Rs and the other governing documents of the HOA, which were introduced into evidence.

On July 3, 2024, the court filed a statement of decision (the court's ruling will be covered in greater detail in the discussion section of this opinion). The court found that Joslin had failed to meet his burden of proof as to his alleged causes of action. Alternatively, the court found that the HOA

[4] The HOA later filed an anti-SLAPP motion seeking to dismiss Joslin's cross-complaint. The trial court denied the HOA's anti-SLAPP motion, and the HOA appealed. This court affirmed the trial court's ruling in an unpublished opinion. (*Third Laguna Hills Mutual v. Joslin* (May 5, 2020, G057230) [nonpub. opn.].)

[5] Thereafter, the HOA has provided Joslin with new membership applications, but for unknown reasons Joslin has not completed and/or returned the membership applications to the HOA.

had met its burden of proof as to its affirmative defense under the business judgment rule by showing it acted in good faith.

## II.
## DISCUSSION

Joslin claims the trial court improperly determined that the HOA acted in good faith. We disagree.

"A defense of good faith is necessarily factual in nature." (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1123.) "In both jury and nonjury trials, factual findings made by the trier of fact are generally reviewed for substantial evidence." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500–501.)

This standard of "review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations." (*Ermoian v. Desert Hospital, supra,* 152 Cal.App.4th at p. 501.) "[S]ubstantial evidence review is deferential to the ruling below—and makes it difficult to show reversible error—due to the prism through which it mandates we review the evidence: We must resolve all conflicts in the evidence in favor of the ruling below [citation], must draw all reasonable inferences from that evidence in favor of the ruling below [citation], and may not reweigh the evidence or any credibility findings." (*Estate of Berger* (2023) 91 Cal.App.5th 1293, 1307.)

In this discussion, we will: A) review legal principles regarding the business judgment rule; B) summarize the trial court's factual rulings; and C) analyze the facts under the substantial evidence standard.

7

*A. The Business Judgment Rule*

"A director shall perform the duties of a director . . . *in good faith*, in a manner such director believes to be in the best interests of the corporation and with such care . . . as an ordinarily prudent person in a like position would use under similar circumstances." (§ 7231, subd. (a), italics added.) "In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports or statements ......." (§ 7231, subd. (b).) "A person who performs the duties of a director in accordance with subdivisions (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a director ......." (§ 7231, subd. (c).)

The business judgment rule "refers to a judicial policy of deference to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions." (*Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1263.) "Under this rule, a director is not liable for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation, where no conflict of interest exists." (*Ibid.*) The business judgment rule applies to a homeowners' association that is incorporated as a nonprofit mutual benefit corporation. (*Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1161.)

The business judgment rule may be asserted by a party in a responsive pleading as an affirmative defense. (*Ridley, supra,* 114 Cal.App.5th at pp. 804–805 ["Both the rule of judicial deference and the business judgment rule are affirmative defenses"].)

An affirmative defense is: "'[A] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ......claim, even if all the allegations in the complaint are true.'" (*Morris Cerullo World Evangelism v.*

*Newport Harbor Offices & Marina, LLC* (2021) 67 Cal.App.5th 1149, 1158.)

*B. Relevant Proceedings*

After the court trial, the court filed a statement of decision, which began with a detailed review of the facts. After discussing Cohan's numerous CC&R violations, the various loans made by Joslin to Cohan, and the eventual transfer of ownership of the Unit, the trial court stated:

"For reasons that were not adequately explained, neither Joslin nor Cohan ever made the association aware of [their] new rental relationship. This failure to notify the association, and to obtain its approval, was a clear breach of the CC&Rs.

"Not surprisingly, the loans and subsequent draws were not repaid by Cohan. Given the size of the loans and the funds to be drawn on, the court concludes that Joslin was anticipating that Cohan would not (and probably could not) pay him what was owed. It was more of a 'slow sale' than a loan arrangement.

"Rather than foreclose on the property, [Joslin] accepted a deed in lieu of foreclosure. He testified that this was done solely at Cohan's request, although the court finds that assertion not credible ........As part of this arrangement, Cohan was allowed to remain on the property as a 'renter.' He was also given a one-year option to redeem, which was plainly unrealistic. The court finds it doubtful that either he or Joslin saw this as anything but what it appears to have been—a sale and lease back of the property. Neither Cohan nor Joslin sought association approval to allow Cohan (and his unauthorized subtenants) to occupy the home as a renter.

"Because title was transferred by deed in lieu of foreclosure, no

escrow was opened. The absence of an escrow meant that the association did not receive conventional notice of the sale and lease back[,] and [the HOA] was not afforded an opportunity to enforce the CC&Rs[,] or claim the fines and fees assessed against Cohan in the regular course. Based on Joslin's experience and the facts that came out at trial, the court finds this was not [by] happenstance but by design.

"Not one to mend his ways, Cohan the renter continued to violate the governing rules. He also became delinquent on his rent. At first, the association thought Cohan was still the owner, only later learning that Joslin had become the new owner by reason of the deed in lieu of foreclosure. Joslin indicated that he would file an unlawful detainer action against Cohan and anyone else living in the unit. In return, the association agreed to—and did—waive certain fines and fees once Cohan was out."

The trial court noted that under the provisions of the HOA's governing documents, as an owner Joslin was a member of the HOA. However, "the association has unartfully tried to make [a distinction] that one can be a 'member' but not have 'membership' rights."

The trial court concluded its ruling as follows:

"Joslin had the initial burden of proof. He did not meet it. The court found his explanations as to the nature of the transaction not credible. He tried to present himself as the innocent purchaser who was blocked at every turn by a nefarious association bent on punishing him for the acts of Cohan. However, the evidence showed that [Joslin] failed to properly notify the association of key events and developments. There was no credible evidence that the association took out its displeasure with Cohan on Joslin."

"This is not to say that the association acted perfectly. It is

evident from some of the documents . . . , and the testimony of Francis Gomez, that the association's actions were sometimes disjointed and its directions poorly worded. It was clearly frustrated with Cohan. But it worked with Joslin to get Cohan out via an unlawful detainer action. And it waived some fines and fees assessed against Joslin as a show of good faith so long as he successfully pursued the unlawful detainer action. When Cohan, who was not an approved renter, and the unauthorized subtenants were out, the fines and fees were waived. The court finds the association met its burden as to the sixth affirmative defense. It acted in good faith as to Joslin."

## C. Application and Analysis

According to Francis Gomez, the operations manager for the HOA's management company, Joslin did not timely inform the HOA: (1) that he became the owner of the Unit on February 6, 2017; and (2) that from that point forward he leased the Unit to Cohan. As the trial court noted, this was a breach of the CC&Rs, which provide, in relevant part: "Each lease . . . shall be in writing . . . and . . . the lease shall be effective only after the prior written approval of each tenant as a Resident and of the lease by the Board."

Nevertheless, despite Joslin's apparent CC&R violations, Gomez testified that the HOA thereafter held some of Joslin's fines and fees in abeyance, and attempted to work with him in good faith as he pursued an unlawful detainer action against the former owner Cohan, and the other (apparently underage) subtenants in the Unit.

Gomez also testified that the actions of the HOA were consistent with her understanding of the CC&Rs, and the other governing documents of the HOA. Gomez's testimony is corroborated by the exhibits admitted into

11

evidence, including the bylaws of the HOA, which provide: "Directors and Officers shall perform their duties, including but not limited to duties as Members of any committee of the Board, *in good faith*, in a manner such persons believe to be in the best interests of this Corporation and with such care, including reasonable inquiry, as ordinarily prudent persons in a like position would use under similar circumstances." (Italics added.) Moreover, the HOA's bylaws also provide for the delegation of its duties and responsibilities: "The Board of Directors may authorize any officer or officers, agent or agents, to either into any contract or execute any instrument in the name of and on behalf of this Corporation ......."

In the trial court's comprehensive statement of decision, the court recognized that the HOA's language was in some respects inartful, and its actions with respect to Joslin were not at all times "perfect." But perfection is plainly not what is legally required under a good faith standard of care. (See *Stanislaus Natural Heritage Project v. County of Stanislaus* (1996) 48 Cal.App.4th 182, 193 ["'courts have looked not for perfection but for adequacy, completeness, and a good faith effort'"].)

In short, we find the trial testimony and the exhibits constitute substantial evidence to support the trial court's factual determination that the HOA acted in good faith as to its dealings with Joslin. (See *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119 ["'The testimony of one witness, even that of a party, may constitute substantial evidence'"].)

Thus, we affirm the trial court's judgment in all regards. (See *Morris Cerullo World Evangelism v. Newport Harbor Offices & Marina, LLC, supra,* 67 Cal.App.5th at p. 1158 [an affirmative defense "'will defeat the [opposing party's] . . . claim, even if all [of its] allegations...... are true'"].)

Joslin argues on appeal: "The lower court's statement of decision was based on incorrect and/or inaccurate *characterizations* of evidence." (Boldface & capitalization omitted, italics added.)

Joslin then engages in a lengthy and biased recitation of the alleged facts, largely without accurate citations to the record. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [a failure to present arguments with adequate and comprehensible references to the record on appeal can result in forfeiture of any contention that could have been raised on appeal].) We also note that throughout his briefing Joslin does not cite the evidence introduced at trial that tends to support the trial court's judgment. (See *Verrazono v. Gehl Co.* (2020) 50 Cal.App.5th 636, 652 ["'An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient'"].)

Overlooking the forfeiture obstacles, we respectfully observe that Joslin apparently misapprehends the role of an appellate court. Just to be clear, an appeal is not an opportunity for an appellant to relitigate the underlying facts. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 102 [appellant's brief "is no more than a rehash of arguments about the strength of the evidence, which is not open on appeal"].)

Contrary to Joslin's request, we are <u>not</u> going to second guess the trial court's "*characterizations* of the evidence." (Italics added.) (See *In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175 [a trial court determines factual issues because it can observe the demeanor of witnesses and is therefore in a better position to assess their credibility].)

Our role on appeal is usually fairly narrow. Here, it is primarily to determine whether the trial court's factual finding that the HOA acted in

13

good faith is supported by substantial evidence. (See *Ekstrom v. Marquesa at Monarch Beach Homeowners Assn., supra,* 168 Cal.App.4th at p. 1123 ["A defense of good faith is necessarily factual in nature"].) Having found such evidence, largely in the form of Gomez's testimony and the corroborating exhibits, we must affirm the trial court's judgment.

Joslin also argues on appeal: "There is sufficient evidence presented at trial that *contradicts* the Court's decision concerning the application of the business judgment rule." (Boldface & capitalization omitted, italics added.)

But again, Joslin appears to be operating under a fundamental misunderstanding. It is plainly <u>not</u> our role to resolve any purported *contradictions* in the evidence, and we will not engage in such an irrelevant analysis. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment"]; see also *Ermoian v. Desert Hospital, supra,* 152 Cal.App.4th at p. 501, italics added [a substantial evidence "review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, *contradicted or uncontradicted*, which will support the trial court's factual determinations"].)

Finally, Joslin argues on appeal: "Contrary to the [business judgment rule], Joslin did not sue any Board Members for the decisions they made. Joslin sued the association for the damages they caused him, and the [business judgment rule] does not protect the association's wrongful actions against Joslin."

However, Joslin does not cite any authority for the proposition

14

that only an HOA's board members—and not the HOA itself—is protected by the business judgment rule. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1029 [failure to provide citations to supporting authority constitutes forfeiture on appeal].) Further, this legal argument was not raised in the trial court. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["'issues not raised in the trial court cannot be raised for the first time on appeal'"].)

Indeed, if we once again overlook the forfeiture obstacles, our research confirms that an incorporated HOA is—in fact—protected by the business judgment rule. (See *Ridley, supra,* 114 Cal.App.5th at p. 804 ["The HOA is also protected by the business judgment rule. Although the business judgment rule does not apply to all condominium associations [citation], it applies here because the HOA is incorporated"].) In this case, there was no dispute that the HOA was at all times incorporated in California.

To reiterate and conclude, we find substantial evidence to support the trial court's finding that the HOA acted in good faith under the business judgment rule.

III.

DISPOSITION

The trial court's judgment in favor of Third Laguna Hills Mutual is affirmed. Costs on appeal are awarded to Third Laguna Hills Mutual.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

DELANEY, J.